## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 06-10183-01-MLB |
| | ) | |
| JOHN V. NGUYEN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM AND ORDER

This matter comes before the court on defendant's motion to suppress. (Doc. 18.)  The motion has been fully briefed (Docs. 19, 22) and the court conducted an evidentiary hearing on January 9, 2007. Defendant's motion is DENIED for the reasons stated herein.

## I.  FACTS

This case arises from a traffic stop on the morning of August 16, 2006.  At approximately 9:30 a.m. that morning, Kansas Highway Patrol Troopers J.W. (Jeff) Patrick[1] and Dale Brooks were sitting stationary on an entrance ramp to Interstate 35 near Wichita, Kansas when Patrick observed a pickup truck that appeared to be speeding.  Patrick pulled out to follow the truck and observed it following another vehicle too closely.  The truck then passed the vehicle and cut the vehicle off when the truck reentered the right lane of travel.  Patrick pulled the truck over.

---

[1] Patrick has been a Trooper with the Kansas Highway Patrol for twenty-one years.  He has extensive training in criminal interdiction stops and has been working with the criminal interdiction team since approximately 1990.  The court credits the testimony of Patrick, the only witness.

Patrick approached the driver of the truck; Brooks remained in the patrol car. Patrick identified John V. Nguyen, the only occupant of the truck, per Nguyen's Texas driver's license. The truck's license plate was also from Texas. Patrick advised Nguyen of the reason for the stop and asked to see Nguyen's insurance and vehicle registration. Neither the insurance nor the vehicle registration were in Nguyen's name and Nguyen stated he borrowed the truck from a friend. When asked by Patrick when he borrowed the truck, Nguyen nodded affirmatively to "yesterday."

In the passenger cab of the truck, Patrick observed the following: two plugged in cellular phones, an energy drink, a plugged in radar detector, food wrappers strewn about the seat and floor, two garage door openers, and one small soft-sided travel bag. Patrick asked Nguyen about his trip/travel plans. Nguyen answered that he was going to Minneapolis to purchase a boat from his friend. Nguyen stated that his friend was getting married and therefore Nguyen was taking over his friend's payments on the boat. When Patrick asked what kind of boat Nguyen was purchasing, Nguyen replied "a boat." Patrick asked again what kind of boat Nguyen was purchasing and Nguyen answered "a sixteen foot boat." A third time, Patrick asked what kind of boat Nguyen was purchasing and Nguyen answered "a bass boat." The final time Patrick asked for information about the boat, he asked what brand the boat was and Nguyen replied "a boat." Nguyen appeared to Patrick to be overly nervous because Nguyen's hands shook, he did not make eye contact with Patrick, he paused before answering any questions, and he had a blank look on his face when he did answer Patrick's questions.

-2-

Patrick returned to his patrol car, performed the routine checks on Nguyen's driving documents, and ran a criminal history report on Nguyen.  Patrick noted that Nguyen had a previous arrest involving possession of stolen property, but no other information came up on the checks.  Patrick then re-approached the driver's window of Nguyen's truck; Brooks approached the passenger's side of Nguyen's truck at the same time.  Patrick returned Nguyen's driving documents to him, told Nguyen he was only giving him a warning, and explained the nature of the driving violation.  Nguyen answered "sorry about that."  Patrick told Nguyen to "have a safe trip" and then left the driver's window of the vehicle.  At the same time, Brooks walked away from the passenger window.  At this point, approximately twelve minutes had passed since Patrick first stopped Nguyen.

Patrick took approximately two steps away from the driver's window, looked at the truck's tire, and then re-approached the driver's window.  Brooks did not re-approach.  Patrick stated to Nguyen: "Hey John, can I ask a couple questions before you go?"  Nguyen responded "ok."  Patrick told Nguyen he noticed Nguyen had a criminal history of possession of stolen property and then asked Nguyen if there was any stolen property or illegal drugs in the truck.  Nguyen replied "no."  Patrick then asked Nguyen if he could search the truck.  Nguyen nodded and said "yeah."

Patrick testified regarding his normal, routine practice when talking to individuals he has stopped.  Patrick uses a calm and normal tone, does not talk down to the individual, and treats the individual with respect throughout the course of a stop so that the individual feels at ease.  Patrick testified he wants to keep the individual at

-3-

ease as a means of increasing officer safety.  Patrick testified he never made any threats to Nguyen and never gestured to his firearm.

After receiving consent to search, Patrick had Nguyen step out of the truck.  Patrick performed a pat-down search of Nguyen and then had Nguyen stand in front of the truck while Patrick searched.  In his search, Patrick found a valve stem tool, a pair of gloves, two large (one and a half to two feet long) flat screwdrivers with black marks on them, a tool for removing a spare tire under a truck, and two additional cellular phones.  The spare tire had fresh scrape marks on it from a recent mounting and sat in a new position from where it had previously been mounted.  The tire had a "thud" sound when tapped, rather than sounding hollow, and a density meter reading of sixty-two, instead of the normal reading of twenty.  The tire was cut open and Patrick found twenty pounds of cocaine inside the tire.  Nguyen was ultimately arrested and read his <u>Miranda</u> rights, and he subsequently gave incriminating statements to law enforcement officers.

## II.  ANALYSIS

Nguyen files his motion to suppress because he believes his Fourth Amendment rights have been violated.  Nguyen acknowledges that there was a traffic violation to justify the initial traffic stop.  However, Nguyen asserts that the detention for the initial traffic stop was not reasonably related to the justification for the stop.  Nguyen then argues that his further detention after the traffic stop was completed violates the Fourth Amendment because 1) his consent to additional questioning was given only in response to a coercive show of authority by Patrick, and 2) there was no reasonable suspicion that criminal activity was occurring.  Nguyen then argues that his consent

-4-

to the search of his truck, during this period of allegedly violative detention, was not valid because it was not given voluntarily, freely, intelligently, and without coercion.  (Doc. 19.)  Nguyen therefore asserts that the search of the truck was illegal and the evidence obtained as a result of that search (the cocaine and the statements Nguyen made post-Miranda) should be suppressed.  (Doc. 18.)

A.  VALIDITY OF THE INITIAL STOP

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief."  See Delaware v. Prouse, 440 U.S. 648, 653 (1979).  "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio. United States v. King, No. 05-6399, 2006 WL 3705188, ay *2 (10th Cir. Dec. 18, 2006).  The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20.

An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred."  United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir.

-5-

1998).   Nguyen acknowledges that a traffic violation occurred justifying Patrick's stop of the truck.  Even when the initial stop is valid, however, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop."  Florida v. Royer, 460 U.S. 491, 500 (1983).  An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation."  United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005).  The uncontroverted testimony shows that the investigative detention for the traffic stop was valid.  The stop lasted only long enough for Patrick to approach the truck and speak with Nguyen about his travel plans, explain the nature of the traffic violation to Nguyen, return to the patrol car and run checks on Nguyen's license and criminal history and run a check on the truck's registration, and then re-approach the truck to return the driving documents to Nguyen.  The traffic stop lasted only twelve minutes.   Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference.  Terry, 392 U.S. at 20.

B.  VALIDITY OF THE CONTINUATION OF THE STOP

     After the purpose of the traffic stop is complete, "further detention for purposes of questioning unrelated to the initial stop" is generally impermissible.  Bradford, 423 F.3d at 1156-57.  In general, "lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring.  Second,

further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." <u>Hunnicutt</u>, 135 F.3d at 1349. The court finds that Patrick's questioning of Nguyen after Patrick returned Nguyen's driving documents to him was valid under both rationale.

"If an encounter between an officer and a driver ceases to be a detention and becomes consensual, and the driver voluntarily consents to additional questioning, no further Fourth Amendment seizure or detention occurs." <u>Bradford</u>, 423 F.3d at 1158. "A traffic stop may become a consensual encounter, requiring no reasonable suspicion, if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority." <u>United States v. West</u>, 219 F.3d 1171, 1176 (10th Cir. 2000). "Whether an encounter can be deemed consensual depends on whether the police conduct would have conveyed to a reasonable person that he or she was not free to decline the officer's requests or otherwise terminate the encounter." <u>Id.</u> The Tenth Circuit follows a "bright-line rule that an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned." <u>Bradford</u>, 423 F.3d at 1158. The court accepts Patrick's testimony that he returned Nguyen's driving documents before asking Nguyen questions and further detaining him, and the videotape of the encounter supports this testimony.

"The return of a driver's documentation is not, however, always sufficient to demonstrate that an encounter has become consensual. A routine traffic stop becomes a consensual encounter once the trooper has returned the driver's documentation so long as a reasonable person

-7-

under the circumstances would believe [they] were free to leave or disregard the officer's request for information." <u>Bradford</u>, 423 F.3d at 1158 (internal quotations and citations omitted). Here, the traffic stop had become a consensual encounter. Patrick returned Nguyen's driving documents to him, explained the traffic violation and then told Nguyen to have a safe trip. Patrick and Brooks then left the windows of Nguyen's vehicle. Only then did Patrick re-approach Nguyen to ask him if Patrick could ask a few questions.[2] The uncontroverted testimony shows that Nguyen said "ok" to this request. Only one officer was present at the time Patrick asked for permission to continue the encounter. The evidence also shows that there were no threats made; Patrick was not brandishing his weapon, touching Nguyen, or standing intimidatingly close to Nguyen. There is no indication that Patrick made any "coercive show of authority" such that a reasonable person would not have felt free to leave. <u>See</u> <u>United States v. Turner</u>, 928 F.2d 956, 959 (10th Cir. 1991) (discussing factors for finding a "coercive show of authority, such as the presence of more than one officer, the display of a weapon, physical touching by the officer, or his use of a commanding tone of voice indicating that compliance might be compelled").

In addition, Patrick had reasonable suspicion that illegal activity was occurring. In determining whether reasonable suspicion exists, the court looks to the "totality of the circumstances" to determine if Patrick had a "particularized and objective basis for

---

[2]    Patrick testified he felt he had reasonable suspicion to prolong the detention but asked for consent as well because "consent is the best."

suspecting legal wrongdoing." <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002).  Reasonable suspicion may exist even if each factor alone is "susceptible of innocent explanation."  <u>Id.</u> at 277 (stating that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct").  A determination of reasonable suspicion to detain after a traffic stop should be based on the totality of the circumstances.  <u>United States v. Salzano</u>, 158 F.3d 1107, 1111 (10th Cir. 1998).

Patrick testified that he became suspicious of criminal activity after the traffic stop was completed because: 1) if someone was "taking over payments" on a boat, he thought it must be a large and expensive boat and therefore a person would know facts about the boat, such as its size and brand name;[3] 2) his previous experience was that the fact that the vehicle was a borrowed truck and the registered owner was not present could be a sign of smuggling because it allows the person driving the vehicle an opportunity to distance himself from any illegal activity by claiming he did not know contraband was present;[4] 3) his previous experience was that Texas was a source state for narcotics;[5] 4) the fact that Nguyen had a criminal history of

---

[3]  <u>See</u> <u>United States v. Santos</u>, 403 F.3d 1120, 1129 (10th Cir. 2005) (noting that unusual travel plans can be considered in a finding of reasonable suspicion).

[4]  <u>See</u> <u>United States v. Lujan</u>, No. 98-2275, 1999 WL 565524, at *8 (10th Cir. 1999) (recognizing that "the fact that a suspect provided registration papers which did not establish the suspect as the owner of the vehicle can support, when coupled with other factors, a reasonable suspicion of criminal activity (internal quotations and alterations omitted)).

[5]  This factor adds little to the analysis.  <u>See</u> <u>United States v. Guerrero</u>, ___ F.3d. ___, 2007 WL 4217, at #4 (10th Cir. 2007) (noting that travel from a source state "does little to add to the

possession of stolen property[6] and it was early morning, combined with the fact that Nguyen was overly nervous,[7] could have been an indication that the truck had been stolen but had not yet been discovered by the true owner as missing; 5) the two garage door openers could be a sign of drug smuggling because Patrick's experience was that storage garages are often used to store drugs and a person normally only has one garage door opener; 6) the food wrappers could be an indication of smuggling because Patrick's experience was that smugglers drive straight from point A to point B as quickly as possible and with as few stops as possible to reduce the total amount of time on the highways;[8] 7) the possession of only one small travel bag for a trip across the country would be too little luggage for a normal person but Patrick's experience was that smugglers travel with very little luggage;[9] 8) Nguyen's nervousness was beyond the normal amount for a routine traffic stop and the nervousness did not subside

---

overall calculus of suspicion").

[6] This fact is not, by itself, dispositive of the issue of reasonable suspicion. See United States v. West, 219 F.3d 1171, 1179 (10th Cir. 2000) ("While knowledge of a person's prior criminal involvement is not sufficient itself to even rise to the level of reasonable suspicion, it can combine with other factors to support the requisite standard of suspicion.").

[7] See Lujan, 1999 WL 565524, at *7 (stating that "extreme nervousness may be taken into account as one factor, among others, contributing to a reasonable suspicion that criminal activity may be afoot").

[8] This factor adds little to the analysis. See United States v. Wood, 106 F.3d 642, 947 (10th Cir. 1997) (noting that the presence of fast-food wrappers in vehicles has become commonplace and any suspicion associated with finding them is "virtually nonexistent").

[9] See United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990) (noting that a relative lack of luggage for a trip can be one factor in finding reasonable suspicion).

as it would with a normal stop.[10]

Taken individually, the factors mentioned by Patrick would not be sufficient to support a finding of reasonable suspicion. However, when considered with a "totality of the circumstances" view, and when the court considers Patrick's years of experience in criminal interdiction,[11] the court finds reasonable suspicion did exist to support the continued detention to further question Nguyen.[12]

c. VALIDITY OF THE SEARCH

Because the search that occurred was a warrantless search, the government bears the burden of proving by a preponderance of the evidence that the search was justified.  United States v. Zubia-Melendez, 263 F.3d 1155, 1160 (10th Cir. 2001).  The government must prove that consent to search was given voluntarily and that there was "no duress or coercion, express or implied, that the consent was unequivocal and specific, and that it was freely and intelligently given."  United States v. Sanchez-Valderuten, 11 F.3d 985, 990 (10th Cir. 1993).  Whether a party has voluntarily consented is evaluated based on the totality of the circumstances.  United States v. West, 219 F.3d 1171, 1177 (10th Cir. 2000).  The court finds that Nguyen voluntarily consented to the search of the truck.  Specifically, the court finds that Nguyen gave his consent to search when he nodded and

---

[10]  See note 7, supra.

[11]  See United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998) (stating that it is appropriate to give deference to an officer's "ability to distinguish between innocent and suspicious actions" as one factor in finding reasonable suspicion).

[12]  Although a finding of reasonable suspicion by the court is a close call, there is no question regarding Nguyen's consent to continue the detention beyond the initial traffic stop.

answered "yeah" to Patrick asking if he could search the truck.  As discussed above, a reasonable person would not believe Patrick was exerting a coercive show of authority when he asked Nguyen this question.  Patrick was not using a commanding tone of voice, did not threaten Nguyen, and did not intimidate Nguyen.

## III.  CONCLUSION

As a result of the above analysis, the court finds there was no constitutional violation committed against Nguyen.  Because there was no constitutional violation, the cocaine found during the search and the subsequent statements made by Nguyen after he was read his <u>Miranda</u> rights are not required to be suppressed as "fruit of the poisonous tree."  <u>See</u> <u>Wong Sun v. United States</u>, 371 U.S. 471, 484 (1963) (requiring exclusion of evidence obtained through an illegal search).

Defendant's motion to suppress is DENIED.  The clerk is directed to set this case for trial.

IT IS SO ORDERED.

Dated this   11th   day of January, 2007, at Wichita, Kansas.

S/Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE